IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA HERNANDEZ, HENRY SALDIVAR, AARON MORALES BAHENA, EDWINA MARIN and FERNANDO MORALES, | |
| Plaintiffs, | |
| v. | Case No. 11 C 7579 |
| PARTNERS WAREHOUSE SUPPLIER SERVICES, LLC, PARTNERS WAREHOUSE OF ILLINOIS, LLC, BRIAN SWAW d/b/a COPIER SOURCE 2000, BRIAN SWAW, Individually, JOE SWAW, Individually, CRAIG SESEMANN, Individually, and KARL BERGER, Individually, | Hon. Harry D. Leinenweber |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss. For the reasons stated herein, the Motions are granted in part and denied in part.

I.  BACKGROUND

The following facts are taken from Plaintiffs' Complaint.

Plaintiffs Sandra Hernandez ("Hernandez"), Edwina Marin ("Marin"), Aaron Morales Bahena ("Bahena"), Fernando Morales ("Morales") and Henry Saldivar ("Saldivar") all worked in Elwood, Illinois.  Plaintiffs contend they worked for two Defendant corporate entities (Partners Warehouse Supplier Services, LLC and

Partners Warehouse of Illinois, LLC), which they collectively refer to as "Partners," as will the Court.

Defendant Craig Sesemann is president of Partners. Defendant Joe Swaw is Partners' Vice-President and father of Defendant Brian Swaw, who supervised Plaintiffs at Partners. Brian Swaw is also the principal of Defendant corporate entity Copier Source 2000. Plaintiffs allege Brian Swaw ran his Copier Source 2000 business out of the Partners' location and instructed Defendants to perform Copier Source 2000 work from time to time.

Plaintiffs allege Brian Swaw routinely sexually harassed, and in some cases sexually assaulted and battered Hispanic female employees of Partners. Hernandez and Marin allege they were subject to Brian Swaw's unwelcome sexual advances, sexual conduct and sexual comments. Hernandez additionally alleges Brian Swaw grabbed her buttocks and also grabbed the neckline of her shirt to expose her breasts.

Other conduct by Brian Swaw toward female Hispanic employees in general included pinching of breasts while shouting "titty twisters," publicly offering money for oral sex, grabbing them from behind and simulating intercourse, thrusting his crotch in their faces, grabbing and slapping them, and sitting on their laps.

Brian Swaw is also alleged to have routinely and consistently denigrated both male and female Hispanics with comments of "fucking Mexicans" (whether they were Mexican or not), "you stupid fucking

Mexicans, you don't know how to read or write," and general comments ridiculing Hispanic culture. Plaintiffs also allege Partners and Copiers Source 2000 discriminated on the bases of race and gender in making job assignments and promotions.

Around August 14, 2010, Hernandez complained to Partners Supervisor Doug Sesemann (brother of Defendant Craig Sesemann) about Brian Swaw's "sexual assault, battery, harassment and discrimination." Am. Compl. 19. Also in August 2010, Saldivar complained to Doug Sesemann about Swaw's "sexual harassment and discrimination." *Id.* On August 24, 2010, Marin complained directly to Defendant Craig Sesemann about "Swaw's sexual assaults." *Id.*

On the same day, Marin, Hernandez and another Partners employee, Priscilla Marshall (Hernandez's daughter and Saldivar's niece) filed a police report with Elwood Police, each alleging sexual assault and battery against Brian Swaw. (Marshall had a separate lawsuit before Judge Samuel Der-Yeghiayan in this District that was voluntarily dismissed with leave to reinstate upon conclusion of the criminal case. *Marshall v. Partners Warehouse, Inc. et al*, No. 10-C-7758.) The next day, August 25, 2010, other Partners employees also gave statements to Elwood police in support of Marin and Hernandez' sexual assault and battery report.

Plaintiffs allege Defendants took no remedial action against Brian Swaw after these complaints. Partners suspended Hernandez on

August 29, 2010.  The next day, Bahena and Saldivar were suspended. On September 5, 2010, Marin was fired.  On September 13, 2010, Hernandez, Saldivar and Bahena were fired.

Plaintiffs allege that Hernandez, Saldivar and Bahena were falsely accused of theft from Partners as a pretext for retaliation for their complaints.  Plaintiffs do not identify specifically what complaints Bahena made, or to whom, but generally allege he was fired "in retaliation for reporting sexual harassment and discriminatory acts by Defendant Brian Swaw and as a result of [his] relationship with Plaintiff Hernandez and Priscilla Marshall."  Am. Compl. 22.

In approximately September 2010, Partners enlisted Defendant Karl Berger ("Berger"), a Cicero police officer, in connection with the theft investigation and the sexual harassment and battery complaints.  Plaintiffs allege Berger and Brian Swaw made clear to employees that Berger was a police officer.  Berger interviewed employees and Plaintiffs allege he made it clear to them he was friendly with other police and immigration authorities, and threatened to have employees arrested or deported unless they recanted sexual harassment claims.  He was successful in getting several employees to recant.

On October 5, 2010, Berger interviewed Plaintiff Morales and accused him of hiding the company's stolen goods in his garage for Plaintiffs Hernandez, Saldivar and Bahena.  He also accused

- 4 -

Morales' of having a fake Green Card. He informed Morales that he should be careful because he might get pulled over by Berger's friends in police departments or with U.S. Immigration and Customs Enforcement.

Morales was fired February 4, 2011. In addition to the Berger interrogation, he also alleges Partners' agents had him followed and photographed outside of work, broke into his car and searched it and made threatening phone calls and text messages – as many as 10 of the latter - on June 2, 2011.

Around May 10, 2011, Partners, through Craig Sesemann, Joe Swaw and Brian Swaw, filed an allegedly false complaint with police alleging theft against Hernandez, Saldivar and Bahena. Plaintiffs allege that this was the product of a conspiracy between the Swaws, Sesemann and Berger to deprive Hernandez, Saldivar and Bahena of their liberty and free speech rights, and that the conspiracy was grounded in race and gender animus.

A judge issued arrest warrants for each, leading to their arrest and jailing for approximately a week. As best the Court can tell, the criminal case is pending. Further relevant facts are discussed below where pertinent. Because of the volume of counts, a chart outlining each count and its disposition is included in the conclusion of this opinion.

## II.  **ANALYSIS**

### A. Counts and Parties Reasonably Related
### to EEOC Charges (Counts II-VIII, X)

Defendants seek dismissal of Defendant Copier Source 2000 and of Counts II through VIII on the grounds that Copier Source 2000 and the specific charges in Counts II-VIII were not discussed in the EEOC charges – a requirement of bringing a Title VII complaint. *See Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 907 (7th Cir. 1981).

Before ruling, however, the Court must decide whether it may properly consider the EEOC charging documents.  Plaintiffs did not attach them to their Complaint, but Defendants did attach them to their Motion to Dismiss.

Under Title VII, although a plaintiff must have lodged administrative charges with the EEOC before filing suit, he need not attach those EEOC charges to his complaint to survive a motion to dismiss.  *Gaytan v. City of Chicago*, 11-8624, 2012 U.S. Dist. LEXIS 93269, at *20-21 (N.D. Ill. Jul. 5, 2012).

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleadings, and as such, the Court's consideration of matters outside the pleadings is not generally permitted unless the court converts the motion into one for summary judgment pursuant to Rule 12(d)."  *Sterling Fed. Bank, F.S.B. v.*

*Countrywide Fin. Corp.*, 11-2012, 2012 U.S. Dist. LEXIS 86282, at *23 (N.D. Ill. Jun. 21, 2012).

However, a Court may consider documents referred to in a complaint and central to a plaintiff's claim without converting to a motion for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Additionally, a non-movant is free to assert new facts in his response to the motion to dismiss and the Court is free to consider them. *Id.* Here, Plaintiffs referred to the EEOC charges in their Complaint. They also cited to them in responding to the Motion to Dismiss and do not appear to object to their consideration, so the Court considers the EEOC complaints.

In regards to racial discrimination claims, Saldivar, Bahena, Marin and Hernandez noted in their EEOC complaints that sexual harassment occurred against *Hispanic* women specifically, and thus set the stage for both a sexual and racial harassment complaint. Hernandez and Marin each checked "race" on the EEOC form as a basis for the discrimination they had encountered. An EEOC investigation of these racial discrimination components would likely have gone on to examine whether Hispanics were harassed, even outside the context of sexual harassment. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (noting Plaintiffs can proceed on claims not explicitly set forth in an EEOC charge if the claim is like or reasonably related to the EEOC charge, and

could be expected to grow out of an EEOC investigation of the charge and involves the same conduct and individuals). Thus Counts III and IV are not dismissed.

In regards to making Copier Source 2000 a defendant, that entity was not named in the EEOC complaints. However, its principal, Brian Swaw, was mentioned in the body of the charges as a supervisor of Partners. Under *Eggleston*, there is an exception to the rule requiring a party be named in an EEOC complaint: an employer who was on notice of the EEOC administrative complaint and had an opportunity to participate in EEOC conciliation proceedings need not be a named employer in the original EEOC charges. *Eggleston*, 657 F.2d at 905. Although Plaintiffs do not specifically plead Swaw was on notice or participated in conciliation proceedings (they only allege it in their response), there is sufficient authority that, at the motion-to-dismiss stage, a Plaintiff is not required to plead the *Eggleston* exception factors. *See Drebing v. Provo Group, Inc.*, 494 F.Supp.2d 910, 913-914 (N.D. Ill. 2007). For that reason, Copier Source 2000 is not dismissed as a Title VII defendant.

However, nowhere in the EEOC complaints is there any mention of disparate job assignments and promotion, on either a gender or race basis, and the Court cannot agree that the EEOC would have been likely to investigate such subject material as a logical

extension of the charges in the EEOC complaints. Accordingly, Counts V-VIII are dismissed with prejudice.

## B. Section 1985 Claims (Counts XV & XVI)

Count XV alleges conspiracy to deprive Plaintiffs Hernandez, Saldivar and Bahena of "their Fourteenth Amendment Rights to Due Process, right to Equal Protection under the law, as well as First Amendment right to freedom of speech . . . as well as their right to be free from unreasonable seizure." It alleges Defendants conspired to manufacture evidence and coerce false statements from witnesses to cause the arrest of Plaintiffs by the Elwood Police Department, and that the conspiracy was born out of both a racial animus and a sex-based animus.

Count XVI alleges "conspiracy to hinder security of" Plaintiff's "rights to due process, equal protection, freedom from false imprisonment, and freedom of speech . . . [by conspiring] to manufacture evidence and coerce false statements from witnesses to hinder the Elwood Police and Will County State's Attorney's investigation of Plaintiffs' claims of sexual harassment and Defendant's theft allegations, thereby hindering the State's ability to secure Plaintiffs' equal protection under the law." Am. Compl. 57. Again, it alleges Defendants did so out of both a race-based animus and a sex-based animus.

A plaintiff must allege four elements to make out a valid cause of action under § 1985(3): (1) a conspiracy; (2) a purpose

of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States. *Triad Assocs. v. Chicago Hous. Auth.*, 892 F.2d 583, 591 (7th Cir. 1989).

To state a claim under § 1985, a Plaintiff must identify a protected property or liberty interest. *Perkins v. Silverstein*, 939 F.2d 463, 468 (7th Cir. 1991). "[A] § 1985 conspiracy claim must show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." *Hegwood v. City of Berwyn*, No. 09-7344, 2011 U.S. Dist. LEXIS 99385, at *23 (N.D. Ill. Sep. 2, 2011). Actions under § 1985 are not available on the basis of *respondeat superior* in the absence of allegations that an official custom, policy or practice has caused the deprivation. *Collier v. Rodriguez*, No. 96-231996 U.S. Dist. LEXIS 13719, at *11-12 (N.D. Ill. Sep. 18, 1996) (citing *Adams v. Pate*, 445 F.2d 105, 107 n.2 (7th Cir. 1991).

Due Process rights and Fourth Amendment Rights are not protected against private conspiracies under Section 1985(3), unless the conspiracy includes state actors or was aimed at influencing state activity. *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000).

- 10 -

To begin the analysis, the Court dismisses the § 1985 claims against Partners and Copier Source 2000 because *respondeat superior* cannot sustain them under the current allegations.

Defendants argue that there is no allegation that Elwood police were part of the conspiracy, and that is correct. But Plaintiffs have alleged that Defendant Berger, under color of law, used his status as a Cicero police officer and used threats of arrest and deportation to coerce witnesses into giving false evidence of theft against Plaintiffs Hernandez, Saldivar and Bahena. Plaintiffs also allege the act of filing a false police report was designed to influence state activity (and they allege this was successful, as Plaintiffs were arrested). These allegations satisfy the government actor requirements. *See Brokaw*, 235 F.3d at 1024 (finding that private actors' false report of child abuse that resulted in child's removal from home was activity aimed at influencing state action and thus constituted a sufficient allegation of conspiracy under § 1985(3)).

A conspiracy between the individual defendants is alleged, as are many acts in furtherance of the conspiracy (such as Berger's interrogations to secure false evidence). The implicit allegation that Defendants had a purpose of (and were successful at) getting Plaintiffs arrested and jailed because of sexual and racial animus satisfies the requirements that Plaintiffs allege Defendants had a purpose of depriving Plaintiffs of equal protection of the law, and

that such a deprivation occurred.   Thus, Count XV is adequate to survive a motion to dismiss.  *See* Section C, *infra*, for further discussion of the underlying Constitutional violation.

Count XVI alleges that Defendants' false allegations were designed to hinder the Elwood Police's investigation of Marin and Hernandez's claims police report of sexual assault and battery, and to mislead the police's investigation of Defendants' theft allegations.  Am. Compl. 57.  The "theft" component of this count is nothing more than a recycling of Count XV.  But the allegation that the conspiracy was designed to prevent police from investigating Hernandez' battery and sexual assault complaint to police against Brian Swaw is not.

However, Plaintiffs' theory under this count is confusing at best.  Although they throw the kitchen sink of "due process, equal protection, freedom from false imprisonment and freedom of speech" into the complaint as the underlying rights violated, there is little to no enunciation, either in the complaint or response brief, as to how interfering with a police investigation violates these rights.

Plaintiffs do argue that the interference with the investigation chilled their First Amendment rights.  "All plaintiffs decided to speak out against this [sexual harassment] abuse by reporting it to Defendants and by reporting it to the police.  The response by Defendants was . . . to have Plaintiffs

arrested and chill Plaintiffs' First Amendment rights by making an example out of them." Pls.' Resp. 7. This is essentially a First Amendment retaliation claim.

But First Amendment retaliation first requires engaging in protected speech. *McKenzie v. Milwaukee County*, 381 F.3d 619, 626 (7th Cir. 2004). The Plaintiffs' speech to company officials is not protected First Amendment speech. *Bell v. J.B. Hunt Transp., Inc.,* 427 Fed. Appx. 705, 708 (11th Cir. 2011) (noting the First Amendment does not apply to private parties). Surprisingly, neither is making a criminal report to police protected speech when it is not on a matter of public interest. *See Houskins v. Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (ruling workplace battery report employee filed with police was not protected speech because it involved solely private conduct). This Court must follow the Seventh Circuit; there is no protected speech and thus, no First Amendment retaliation claim.

As Plaintiffs do not explore any other possible bases for § 1985 liability for this count, neither will the Court. Unlike other counts, Plaintiffs have not suggested they can replead the § 1985 counts, nor does the Court see how they could, with the case law so clear on the matter. The dismissals of the above-specified § 1985 counts are with prejudice.

## C.  Section 1983 Claims

Only Berger is accused of § 1983 violations.  Thus, the other Defendants did not argue to dismiss those counts (XII, XIII, XIV) *per se*, but only in conjunction with the § 1985 counts.  Berger filed a separate motion to dismiss, but borrowed heavily from the other Defendants' motion.  His entire argument to dismiss the § 1983 claims amounts to two sentences.  Berger Mot. to Dismiss, 2. It wholly ignores the Count XIV argument regarding a First Amendment violation, so the Court is tempted to consider the point waived.  However, as the Court has already disposed of First Amendment issue in the § 1985 context, it would be disingenuous to ignore it now.  Count XIV is dismissed with prejudice.

As to the other two counts, Berger and Defendants (in their § 1985 briefing) argue there is no underlying Constitutional violation alleged, and focus on Berger's alleged coercion of witnesses, arguing that is a constitutional deprivation of the witnesses' rights, not Plaintiffs'.  *Buckley v. Fitzsimmons*, 20 F.3d 789, 794-795 (7th Cir. 1994).

*Buckley*, however, is inapposite, and analyzed what constitutes a Constitutional deprivation by a *prosecutor*, not a police officer. For a witness's interrogation to be a Constitutional wrong against a criminal defendant, *Buckley* indicated, the prosecutor must use the unreliable confession at trial, against the defendant.  *Id.* The Seventh Circuit's exploration of due process deprivation by

- 14 -

police, in *Whitlock v. Brueggemann*, is more on point. *Whitlock v. Brueggemann*, 682 F.3d 567, ---; 2012 U.S. App. LEXIS 10825, at *32 (7th Cir. May 30, 2012).

"We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Id.* Furthermore, *Whitlock* distinguished *Buckley* and explicitly examined whether "coercing witnesses to perjure themselves during the investigatory phase of a case can give rise to an actionable due process violation," by either police or a prosecutor. *Id.* at 34. It found, as long as the fabrication had resulted in a deprivation of life, liberty or property, it was a due process violation. *Id.* at 36-37.

Plaintiffs have alleged Berger made clear to all employees he interviewed that he was a police officer, that he acted under color of law; that he threatened witnesses with arrest and deportation unless they provided false evidence of theft against Hernandez, Saldivar and Bahena; and that, but for Berger's actions, those three Plaintiffs would not have been arrested and thus deprived of their liberty. Count XII is sufficiently pled.

Count XIII alleges an equal protection claim based on the same underlying conduct as that in Count XII, adding that the reason for the deprivation was racial animus and thus is an equal protection violation. No defendant challenges the equal protection aspect of

this claim, and the Court will not make the parties' arguments for them. *Long v. Teachers Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (noting underdeveloped arguments are considered waived). The count stands.

### D. Section 1981 Individual Defendants (Count XI)

All Plaintiffs allege Partners, Craig Sesemann, Joe Swaw and Brian Swaw discriminated by race and gender in their "job assignments and job placement decisions." Am. Compl. 51. They further allege that all Plaintiffs were relegated to manual-labor, non-supervisory positions (such as an "order picker") while similarly situated white employees received supervisory or office jobs, or special assignments. They also allege each individual Defendant had the authority to hire and fire Plaintiffs and to direct their work.

The individual Defendants seek dismissal of the 42 U.S.C. § 1981 claims against them on the grounds the Complaint does not sufficiently allege their personal involvement in acts of intentional discrimination. *See Musikiwamba v. Essi, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). The Court agrees, in part. Only Defendant Brian Swaw is alleged to have personal involvement in acts of intentional discrimination (*e.g.*, his multiple alleged racial epithets against Hispanics). Plaintiff objects there are insufficient allegations to indicate Brian Swaw was involved in Plaintiffs' job assignments, but the Court finds that the

- 16 -

allegation that Swaw was able to divert Plaintiffs from Partners' business to work on behalf of his own company indicates that Brian Swaw participated in assigning jobs to Plaintiffs. At this stage of the litigation, that is sufficient.

However, because individual participation in job discrimination by the other individual Defendants was not pled, the Court dismisses without prejudice the individual § 1981 counts against Craig Sesemann and Joe Swaw.

### E. Count XVII: Illinois Whistleblower Act

Defendants seek dismissal of the Illinois Whistleblower Act ("IWA" – 740 ILL. COMP. STAT 174, *et seq.*) claim on the grounds that the retaliation against Plaintiffs for reporting sexual harassment and discrimination is pre-empted by the Illinois Human Rights Act ("IHRA"). Plaintiffs concede this, but seek leave to amend to state more clearly that the retaliation against Plaintiffs was motivated not only by the reporting of the sexual harassment and racial discrimination, but by their reporting to police the crimes of sexual assault and battery offenses.

Plaintiffs claim this IWA violation is not pre-empted by the IHRA. The Court agrees. *See Blount v. Stroud*, 904 N.E.2d 1, 15-16 (Ill. 2009) (ruling the IHRA did not destroy state courts' jurisdiction to hear federal § 1981 discrimination claims because a violation of § 1981 was not among the enumerated acts defined as

"civil rights violations" in the IHRA (775 ILL. COMP. STAT. 5/1-1-103(D)(2000)) and thus pre-empted.

The *Blount* decision also reiterated that IHRA did not pre-empt common law torts where the plaintiff established a basis for imposing liability on defendants *independent* of the IHRA (*i.e.*, without reference to the legal duties created by the Act). *Id.*, at 7-10. Thus, the Illinois Supreme Court said, a plaintiff's claim for negligent hiring and retention of a manager who sexually harassed employees was pre-empted, because "[a]bsent the allegations of sexual harassment, the plaintiff would have no independent basis for imposing liability on the company." *Id.*, at 8 (quoting *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1276 (Ill. 1994) (internal punctuation omitted). But where an employee plaintiff alleged battery, assault and false imprisonment for a manager's conduct of ordering the employee to perform oral sex, touching her inappropriately, attempting to kiss her and confining her to a walk-in cooler where he made sexual advances, the tort claims survived because they still alleged torts absent the prohibition on sexual harassment. *Blount,* 904 N.E.2d at 8-9 (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1996).

Here, as in *Blount*, the prohibited conduct under the Whistleblower Act (retaliation for reporting sexual assault and

battery to police) is not based solely on the fact that the IHRA was violated.

The Court finds Hernandez and Marin have adequately pled this count. The Complaint clearly states that Marin and Hernandez went to the Elwood Police Department to report Brian Swaw's "sexual assaults and batteries." Am. Compl. 20. The Complaint goes on to state that "Defendants Craig Sesemann, Joe Swaw, Brian Swaw and Karl Berger conspired to secure false evidence . . . to discredit the claims of . . . Hernandez and Marin regarding sexual assault [and] battery." *Id*. at 30. It also notes that "[b]ut for Defendants Berger, Brian Swaw, Joe Swaw and Craig Sesemann's conspiracy to obtain coerced and fraudulent statements from Partners employees . . . Hernandez would not have been imprisoned." *Id*. at 31. It also alleges Marin and Hernandez were fired for their complaints. That is sufficient.

No other Plaintiff, however, alleges the retaliation was for the criminal complaint, and those Plaintiffs are accordingly dismissed. Plaintiffs seek leave to replead but the Court denies the request because Defendants lodged this preemption objection previously in their motion to dismiss Plaintiffs' original complaint. Defs.' Mem., 10, ECF 13. Plaintiffs thus were on notice that they needed to address this deficiency. *See Johnson v. Cypress Hill*, 641 F.3d 867, 871-872 (7th Cir. 2011) (courts enjoy

broad discretion to deny amendment where there is failure to cure deficiencies).

### F. Intentional Infliction of Emotional Distress ("IIED") (Count XVIII)

Plaintiffs concede that Defendants' alleged behavior regarding making false police reports and having Plaintiffs arrested does not rise to "extreme and outrageous" conduct needed for an IIED claim, so the Court does not consider this conduct in determining if any Defendant's conduct rose to that level.

Defendants again argue IHRA preemption applies. *See* Section E, *supra*, for discussion of preempting. They are correct when it comes to Plaintiff's argument that Partners "failed to take appropriate measures to rectify" Brian Swaw's conduct of sexual harassment, sexual assault and battery." Pls.' Resp. 10. That duty to act is a duty imposed solely by the IHRA. Therefore, the IIED claim against Partners in regards to this conduct is pre-empted.

But Brian Swaw's repeated comments, sexual propositions and unwelcome touching of Hernandez and Marin, although it may also qualify as sexual harassment, is not pre-empted. *See Maksimovic*, 687 N.E.2d at 23 (Ill. 1996); *see also Adan v. Solo Cup, Inc.*, No. 01-3966, 2001 U.S. Dist. LEXIS 12726 (N.D. Ill. Aug. 21, 2001). In *Adan*, as here, Judge Suzanne Conlon decided that IIED claims based on repeated sexual advances, unwelcome comments and

propositions were not pre-empted and sufficiently alleged extreme and outrageous conduct. The Court notes that the allegations here go further than *Adan*, with Hernandez alleging specific acts of groping and battery while Marin alleges battery generally. Therefore, the count survives as to these two plaintiffs against Brian Swaw.

Plaintiff Morales clears the hurdle, too. He alleges: Defendant Partners' agent, Cicero police officer Berger, threatened Morales with arrest by police or immigration authorities; Partners had him followed and photographed outside of work; Partners' agents twice broke into and searched his vehicle; and Partners' agents threatened him via phone messages and text messages for 10 months – sometimes by as many as 10 texts a day. He also alleges this was done to dissuade complaints of harassment, which would benefit the employer. Therefore, Fernando Morales' IIED action against Defendant Partners may proceed.

All other Plaintiffs' allegations either do not rise to the level of extreme and outrageous conduct or are only actionable because they are prohibited by IHRA, and are therefore pre-empted. Plaintiffs ask for leave to amend, but do not indicate how they could cure any deficiencies. Defendants previously raised their objections to this count in their motion to dismiss the original complaint. Thus, Plaintiffs were on notice they needed to shore up their case. The request to amend is denied.

### G.  Defamation *Per Se* and False Imprisonment

Plaintiffs have withdrawn all allegations of Defamation and False Imprisonment.  Accordingly, Counts XIX and XX are dismissed with prejudice.

### IV.  CONCLUSION

For the reasons stated herein, the Defendants' Motion to Dismiss is granted in part and denied in part as indicated by the following chart.

| COUNT | CHARGE | PLAINTIFF(S) | DEFENDANT(S) | DISPOSITION |
|---|---|---|---|---|
| I | Title VII, Sexual Harassment | Hernandez and Marin for class | Partners | Not challenged by Defendants. |
| II | Title VII, Sexual Harassment | Hernandez and Marin for class | Copier Source 2000 | Motion denied. |
| III | Title VII, Race Discrimination | All Plaintiffs for class | Partners | Motion denied. |
| IV | Title VII, Race Discrimination | All Plaintiffs for class | Copier Source 2000 | Motion denied. |
| V | Title VII, Sex Discrimination | Hernandez and Marin for class | Partners | Dismissed with prejudice. |
| VI | Title VII, Sex Discrimination | Hernandez and Marin for Class | Copier Source 2000 | Dismissed with prejudice. |
| VII | Title VII, Sex & Race Discrimination | Hernandez and Marin for Class | Partners | Dismissed with prejudice. |
| VIII | Title VII, Sex and Race Discrimination | Hernandez and Marin for Class | Copier Source 2000 | Dismissed with prejudice. |
| IX | Title VII Retaliation | All Plaintiffs | Partners | Not challenged by Defendants. |
| X | Title VII Retaliation | All Plaintiffs | Copier Source 2000 | Motion denied. |
| XI | § 1981 Race Discrimination | All Plaintiffs for class | Partners, Craig Sesemann, Joe Swaw & Brian Swaw | Motion denied with regards to Def. Brian Swaw. Other Defendants dismissed with leave to replead. |
| XII | § 1983, Due Process | Hernandez, Saldivar, Bahena | Karl Berger | Motion denied. |
| XIII | § 1983, Equal Protection | Hernandez, Saldivar, Bahena | Karl Berger | Motion denied. |
| XIV | § 1983, Free Speech | Hernandez, Saldivar, Bahena | Karl Berger | Dismissed with prejudice. |
| XV | § 1985, Conspiracy to Deprive: Due Process, Equal Protection, Free Speech | Hernandez, Saldivar, Bahena | All Defendants | Partners & Copier Source 2000 dismissed with prejudice. Motion denied with respect to individual defendants. |
| XVI | § 1985, Conspiracy to Hinder Security of Due Process, Equal Protection, Freedom from False Imprisonment & Free Speech | Hernandez, Saldivar, Bahena | All Defendants | Dismissed with prejudice. |

| COUNT | CHARGE | PLAINTIFF(S) | DEFENDANT(S) | DISPOSITION |
|-------|--------|--------------|--------------|-------------|
| XVII | Illinois Whistleblower Protection Act | All Plaintiffs | Partners, Craig Sesemann, Joe Swaw, Brian Swaw | Except Hernandez and Marin, Plaintiffs' claim dismissed with prejudice. |
| XVIII | Intentional Infliction of Emotional Distress | All Plaintiffs | All Defendants | Marin's and Hernandez' claim against Brian Swaw survives. Morales' claim against Partners survives. All other Plaintiffs and Defendants dismissed with prejudice. |
| XIX | Defamation *Per Se* | All Plaintiffs | All Defendants | Dismissed with prejudice. |
| XX | False Imprisonment | All Plaintiffs | All Defendants | Dismissed with prejudice. |
| XXI | Assault/Battery | Hernandez & Marin | Partners & Brian Swaw | Not challenged by Defendants. |

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 8/17/2012

- 23 -